FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

U. S. DISTRICT COURT
E. DISTRICT OF MO.

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | NO. 4:05CR41 JCH |
| ) | |
| v. ) | |
| ) | |
| REBHAN R&W MEAT COMPANY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## PLEA AGREEMENT, GUIDELINES
## RECOMMENDATIONS AND STIPULATIONS

Come now the parties pursuant to Section 6B1.4, Sentencing Guidelines and Policy Statements (October 1987), and the Administrative Order of this Court (January 2, 1991) and hereby stipulate and agree that the following are the parties' agreements, recommendations and stipulations:

1. **THE PARTIES:**

The parties to the agreements, recommendations and stipulations contained herein are the defendant Rebhan R&W Meat Company, Inc., through its appointed representative Jeffrey G. Rebhan, defense counsel Ronald Jenkins, and the Office of the United States Attorney for the Eastern District of Missouri (hereinafter "the government"). This document and the agreements, recommendations and stipulations contained herein do not, and are not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. It is understood by the parties that the Court is neither a party to nor bound by these agreements, recommendations and stipulations.

2. **THE PLEA AGREEMENTS**:

    A. **The Plea:**

This Agreement is part of a global resolution sought by the defendant. The government's promises not to prosecute and recommendations and stipulations contained in this Agreement are contingent on the execution of a consent order by the United States Department of Agriculture and Rebhan R&W Meat Company, Inc.

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the Information, the Office of the United States Attorney for the Eastern District of Missouri agrees that no further federal prosecution will be brought in this District against Marlise Rebhan, Christine Rebhan, the defendant, and co-defendants Jeffrey G. Rebhan and Edwin Rebhan, relative to the defendant's preparing, packing, handling, offer for sale, or sale of meat and poultry products while an owner or employee of Rebhan R&W Meat Company, Inc. from 1998 through the date of the filing of the Information, of which the Office of the United States Attorney for the Eastern District of Missouri is aware at this time.

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant fully understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees not to bring.

    B. **The Sentence:**

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, the parties have addressed United States Sentencing Guidelines applications to this case and have agreed to these

recommendations. The parties agree that these recommendations fairly and accurately set forth the Guidelines calculations which the parties believe the Court should use in determining the defendant's sentence.

The parties acknowledge that the Guidelines application recommendations set forth herein are the result of negotiations between the parties as to the Guidelines applications they address; that these negotiated recommendations as well as the agreements the government made in paragraph 2A led to the guilty plea in this case; and that each party has a right to rely upon and hold the other party to the recommendations at the time of sentencing. The parties further agree that neither party shall request a sentence above or below the applicable guideline range pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553(a), or any other provision or rule of law, unless that request or facts which support that request are addressed in this document or the request is made with the consent of both parties. The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

C. **Waiver of Post-Conviction Rights:**

(1) **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742. However, in the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea. The parties also agree to waive the right to appeal

whatever sentence is imposed, including any issues relating to the establishment of the Criminal History Category determined by the Court, except the parties reserve the right to appeal any issue relating to a sentence that is above or below the Guidelines range that results from a combination of the Criminal History Category determined by the Court and the Total Offense Level recommended by the parties in this document. The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

(2) *Habeas Corpus*: The defendant acknowledges being guilty of the crime to which a plea is being entered, and further states that neither defense counsel nor the government have made representations which are not included in this document as to the sentence to be imposed. The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

D. **Financial Disclosure:**

The defendant agrees to complete and sign financial forms as required by the United States Probation Office prior to sentencing, including a Net Worth Statement (Probation Form 48); or a Net Worth Short Form Statement (Probation Form 48 EZ); a Cash Flow Statement (Probation Form 48B); a Declaration of Defendant or Offender Net Worth and Cash Flow Statements (Probation Form 48D); and a Customer Consent and Authorization for Access to Financial Records (Probation Form 48E). The defendant agrees to provide complete, truthful and accurate information on these forms and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government. The defendant also agrees to complete and sign financial forms, including a Customer Consent

4

Authorization for Access to Financial Records During Supervision (Probation Form 48I), as required by the United States Probation Office during the defendant's term of supervised release or probation. The defendant agrees to provide complete, truthful and accurate information on these forms and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

E. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

The defendant has discussed with defense counsel and understands that nothing contained in this document is meant to limit the rights and authority of the United States of America to take any civil, tax or administrative action against the defendant including, but not limited to, asset forfeiture, deportation and any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with government agencies. Further, any recommendation in this document as to the amount of loss or restitution is not binding upon the parties in any civil or administrative action by the government against the defendant.

3. **GUIDELINES RECOMMENDATIONS (NOT BINDING ON THE COURT):**

A. **Manual to be Used:** The parties recommend that the 2004 version of the Guidelines Manual applies.

B. **Offense Conduct:**

(1) **Base Offense Level:** The parties recommend that the base offense level is 6 as found in Section 2N2.1(a).

(2) **Chapter 2 Specific Offense Characteristics:** The parties recommend that the following Specific Offense Characteristics apply: (a) 4 levels should be added pursuant to

5

Section 2B1.1(C), because the loss exceeded $10,000.

C. **Chapter 3 Adjustments:** The parties recommend that the no adjustments, other than acceptance of responsibility, apply.

D. **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. The parties further agree that the defendant's eligibility for a reduction pursuant to Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the government subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

E. **Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Level is 8.

F. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court after it reviews the Presentence Report. The Criminal History Category determination will be made only after the United States Probation Office obtains and evaluates the records it can find of the defendant's criminal history. Prior convictions can affect the sentence and usually result in a harsher sentence. Both parties retain their right to challenge the

finding of the Presentence Report as to the defendant's criminal history and the applicable category; however, all decisions as to the appropriate Criminal History Category by the Court are final and not subject to appeal.

Both parties are aware that the results of a preliminary criminal record check will be available for review in the Pretrial Services Report.

G. **Acknowledgment of Effect of Recommendations:**

The parties recognize that they may not have addressed or foreseen all the Guidelines provisions applicable in this case. Guidelines applications not expressly addressed by the parties' recommendations, but which are addressed by the Presentence Report or the Court, may be presented to the Court for consideration. The parties agree and understand that the Court, in its discretion, may apply any Guidelines not addressed in this document.

Furthermore, this Court is not bound by these recommendations. The refusal of this Court to follow the recommendations of the parties shall not serve as a basis to withdraw the plea.

4. **STIPULATION OF FACTS RELEVANT TO SENTENCING:**

The parties stipulate and agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt:

a. At all relevant times, Rebhan R&W Meat Company, Inc. (hereafter R&W), the defendant herein, was a corporation organized and existing under the laws of the State of Missouri, doing business at 3532 South Broadway, St. Louis, Missouri 63118.

b. At all relevant times, R&W was a federally inspected facility (FSIS Establishment No. 8665), that processed meat and poultry products. R&W also purchased meat and poultry products from other processors and sold the products to state institutions in Missouri, Illinois,

7

and elsewhere.

  c.  Prior to December 1998, Edwin Rebhan, a co-defendant, was the president of R&W. Since December 1998, he has continued as an employee of R&W.

  d.  From December 1998 to the present, Jeffrey G. Rebhan, a co-defendant, has been the president of R&W. Prior to December 1998, he was the vice president of R&W.

  e.  At all relevant times, R&W sold and transported meat and meat products and poultry and poultry products (products) to correctional institutions and mental health institutions in Missouri and Illinois. In some instances, R&W contracted directly with Missouri and Illinois and in other instances R&W sub-contracted with the companies that had contracts with the states.

**Alton Mental Health Center, Alton, Illinois**

Deliveries of Link Sausage

  f.  On or before May 17, 1999, the Defendants delivered to the Alton Mental Health Center approximately 160 pounds of pork link sausage, which smelled and tasted bad.

  g.  On or before June 11, 1999, the Defendants delivered to the Alton Mental Health Center approximately 200 pounds of pork sausage links, which smelled and tasted bad.

  h.  On or about June 18, 1999, the Defendants delivered to the Alton Mental Health Center approximately 200 pounds of pork sausage links, which had a pack date of April 9, 1999, and which smelled and tasted bad.

  i.  On or about July 22, 1999, the Defendants delivered to the Alton Mental Health Center approximately 400 pounds of pork sausage links. 200 pounds of the sausage had the same pack date, April 9, 1999, as the sausage that had previously been rejected. An additional 160 pounds of sausage smelled bad.

Deliveries of Poultry and Meat Products

  j.  On or about May 17, 1999, the Defendants shipped to the Alton Mental Health Center over 600 pounds of meat and poultry products, which were completely thawed and the boxes appeared soggy and crushed due to the dripping food products.

  k.  On or about May 24, 1999, the Defendants re-delivered to the Alton Mental Health Center some of the same above-described poultry and poultry products, which the Defendants had attempted to re-freeze and which once again was rejected.

**Central Missouri Correctional Center, Jefferson City, Missouri**

  l.  On or about March 9, 1999, the Defendants delivered to the Central Missouri Correctional Center approximately 1,982.8 pounds of pork butts, which were green and smelled bad.

  m.  On or about June 3, 1999, the Defendants delivered to the Central Missouri Correctional Center approximately 2,008.4 pounds of pork butts, which were green and smelled bad.

**Chillicothe Correctional Center, Chillicothe, Missouri**

  n.  On or before August 5, 1998, the Defendants delivered to the Chillicothe Correctional Center 139.85 pounds of turkey bologna. The Defendants had removed the labels from boxes of turkey bologna and had written a weight on the boxes that was in excess of the actual weight.

**Farmington Correctional Center, Farmington, Missouri**

  o.  On June 5, 1998, the Defendants delivered to the Farmington Correctional Center approximately 833.95 pounds of turkey bologna. To conceal the age of the turkey bologna, the Defendants had removed the portion of the box label where the manufacturer listed the "Use or

9

Freeze By" date of February 15, 1998.

    p.    On June 5, 1998, the Defendants delivered to the Farmington Correctional Center approximately 754.21 pounds of turkey pastrami. To conceal the age of the products, the Defendants had removed the portion of the box label where the manufacturer had listed the manufacturing date of July 10, 1997.

    q.    On August 4, 1998, the Defendants delivered to the Farmington Correctional Center approximately 499.98 pounds of smoked turkey pastrami. To conceal the age of the products, the Defendants had removed the portion of the box label where the manufacturer listed the "Use By" date of November 18, 1997.

### Jefferson City Correctional Center, Jefferson City, Missouri

    r.    On or about March 9, 1999, the Defendants delivered to the Jefferson City Correctional Center approximately 2,511.9 pounds of pork butts, which were green and smelled bad.

    s.    On or about June 7, 1999, the Defendants delivered to the Jefferson City Correctional Center approximately 2,519.6 pounds of frozen pork butts, which were green and smelled bad.

    t.    On or about July 1, 1999, the Defendants delivered to the Jefferson City Correctional Center approximately 1,009.2 pounds of pork butts, which were green and smelled bad.

### Madden Mental Health Center, Hines, Illinois

    u.    On or about April 12, 1999, the Defendants delivered to the Madden Mental Health Center approximately 160 pounds of pork sausage links, which smelled and tasted bad.

10

### Missouri Eastern Correctional Center, Pacific, Missouri

v.  On or about June 7, 1999, the Defendants delivered to the Missouri Eastern Correctional Center approximately 983.2 pounds of pork butts, which were green and smelled bad.

### Moberly Correctional Facility, Moberly, Missouri

w.  On or about June 7, 1999, the Defendants delivered to the Moberly Correctional Center approximately 2,196.3 pounds of pork butts, which were green and smelled bad.

x.  On or about July 1, 1999, the Defendants delivered to the Moberly Correctional Center approximately 1,024.8 pounds of pork butts, which were green and smelled bad.

### Potosi Correctional Center, Potosi, Missouri

y.  On or about June 4, 1998, the Defendants delivered to Potosi Correctional Center approximately 295.01 pounds of turkey bologna. To conceal the age of the products, the Defendants removed the portion of the box label where the manufacturer listed the "Use or Freeze By" date of February 15, 1998.

z.  On or about August 3, 1998, the Defendants delivered to Potosi Correctional Center approximately 298.73 pounds of turkey bologna. To conceal the age of the products, the Defendants removed the bottom portion of the labels from the boxes of turkey bologna which label reflected a pack date of December 11, 1997. The Defendants also wrote in a weight that was in excess of the actual weight.

aa.  On or about August 3, 1998, the Defendants delivered to Potosi Correctional Center approximately 113.06 pounds of turkey pastrami. To conceal the age of the turkey pastrami, the Defendants removed the portion of the box label where the manufacturer listed the "Use or Freeze By" date of November 18, 1997.

bb. On or about July 7, 1999, the Defendants delivered to the Potosi Correctional Center approximately 481.9 pounds of pork butts, which were rejected the same day.

### St. Louis Community Release Center, St. Louis, Missouri

cc. On or about May 7, 1998, the Defendants delivered to the St. Louis Community Release Center approximately 73.85 pounds of garlic bologna. To conceal the age of the products, the Defendants removed the "Sell By" date of November 23, 1997.

dd. On or about July 2, 1998, the Defendants delivered to the St. Louis Community Release Center approximately 199.71 pounds of garlic bologna. To conceal the age of the products, the Defendants removed the "Sell By" date of June 6, 1998.

ee. On or about July 2, 1998, the Defendants delivered to the St. Louis Community Release Center approximately 186.04 pounds of turkey pastrami. To conceal the age of the turkey pastrami, the Defendants removed the "Use By" date of November 18, 1997.

The actual and intended loss from all acts and commissions committed, aided or caused by the defendants totaled more than $10,000.

The defendant and the government agree that the facts set forth above are true and may be considered as "relevant conduct" pursuant to Section 1B1.3.

### 5. ELEMENTS OF THE OFFENSE:

As to Count I and II, the defendant admits to knowingly violating Title 21, United States Code, Sections 601(m)(4), 610(d), 676(a) and Title 18, United States Code, Section 2 and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

A. The defendant caused meat and meat products to become adulterated in that the meat and meat products were held under insanitary conditions whereby it may have become

contaminated with filth or whereby it may have been rendered injurious to health;

    B. The meat and meat products had been transported in commerce;

    C. The meat and meat products had been federally inspected;

    D. The defendant was in a responsible position and could have prevented the violation of federal food laws.

6. **PENALTIES:**

    A. **Statutory Penalties:** The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is a fine of not more than $200,000. The Court may also impose a period of supervised release.

    B. **Sentencing Guidelines Effect on Penalties:** The defendant understands that except for Title 18, Sections 3553(b)(1) and Section 3742(e), this offense is affected by the provisions and Guidelines of the "Sentencing Reform Act of 1984," Title 18, United States Code, Sections 3661 et. seq. and Title 28, United States Code, Section 994.

    C. **Mandatory Special Assessment:** The defendant further acknowledges that this offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and that the Court is required to impose a mandatory special assessment of $125 per count for a total of $250, which the defendant agrees to pay at the time of sentencing. The defendant further agrees that if the mandatory special assessment imposed by the Court is not paid at the time of sentencing, until the full amount of the mandatory special assessment is paid, money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay the mandatory special assessment.

7. **FINES, RESTITUTION AND COSTS:**

    The defendant understands that the Court may impose a fine, restitution (in addition to

13

any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be paid as follows: 25% of the fine to be paid on the date of sentencing, and 25% every three months thereafter.

A. **Fine:** The parties recommend that the Court impose a fine of $ $30,000 on defendant Rebhan R&W Meat Company, Inc., a fine of $ $5,000 on co-defendant Edwin Rebhan, and a fine of $5,000 on co-defendant Jeffrey G. Rebhan, for a total of 40,000.00.

B. **Restitution:** The defendant further acknowledges that pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory in this case for all crimes listed in Section 3663A(c) committed after April 24, 1996. The defendant agrees that regardless of the particular counts of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty. The parties stipulate that restitution has been made for the acts alleged in the Information.

C. **Effect of Bankruptcy on Fines or Restitution:** The defendant hereby stipulates that any fine or restitution obligation imposed by the Court is not dischargeable in any case commenced by the defendant or the defendant's creditors pursuant to the Bankruptcy Code. The defendant agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding pursuant to the United States Bankruptcy Code, and stipulates that enforcement of any fine or restitution obligation by the United States or a victim is not barred or affected by the automatic stay provisions of the United States Bankruptcy Code (Title 11, United States Code, Section 362).

8. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

The defendant acknowledges and fully understands the following rights: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pre-trial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

9. **PRESENTENCE REPORT AND SENTENCING:**

Following defendant's guilty plea, a Presentence Report will be prepared. At the time of

15

sentencing, the parties reserve the right to allocution regarding the appropriate sentence to be imposed. Each party also reserves the right to bring any misstatements of fact made either by the other party or on that party's behalf to the attention of the Court at the time of sentencing.

10. **STANDARD OF INTERPRETATION:**

In interpreting this document, any drafting errors or ambiguities shall not automatically be construed against any party, whether or not the party was involved in drafting this document.

11. **VOLUNTARY NATURE OF THE PLEA AND THE PLEA AGREEMENT, RECOMMENDATIONS AND STIPULATIONS:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case or the agreements, recommendations or stipulations contained herein. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty. The defendant's agreements, recommendations and stipulations as set forth above are made in exchange for the United States' agreements, recommendations and stipulations set forth in this document.

The defendant acknowledges that the defendant has voluntarily entered into both this plea and these agreements, recommendations and stipulations. The defendant further acknowledges that this guilty plea is made of the defendant's own free will because the defendant is, in fact, guilty of the conduct specified in sections four and five above.

12. **CONSEQUENCES OF FURTHER CRIMINAL CONDUCT OR WITHDRAWAL OF PLEA BY DEFENDANT:**

The defendant agrees that if, between the time of signing this document and the

16

sentencing the defendant engages in any criminal activity, the government shall be released from any obligations or limits on its power to prosecute the defendant created by this document, and any such conduct shall be grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1.

Further, by this plea and in the event this plea is ever withdrawn, the defendant waives the protection of Rule 11(f), Federal Rules of Criminal Procedure, and Rule 410, Federal Rules of Evidence.

| | |
|---|---|
| 1-28-05<br>Date | Dorothy L. McMurtry<br>DOROTHY L. McMURTRY, #6703<br>Assistant United States Attorney<br>111 South 10th Street, Room 20.333<br>St. Louis, Missouri 63102<br>(314) 539-2200 |
| 1/28/05<br>Date | REBHAN R&W MEAT COMPANY, INC.<br>BY: JEFFREY G. REBHAN, PRESIDENT |
| 1/28/05<br>Date | RONALD JENKINS<br>Attorney for Defendant<br>JENKINS & KLING, P.C.<br>10 South Brentwood Boulevard, Suite 200<br>St. Louis, Missouri 63105 |

17